**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**AGEM MANAGEMENT SERVICES, LLC, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                                                            **NO. 12-1370**

**FIRST TENNESSEE BANK NATIONAL ASSOCIATION**            **SECTION "H"(3)**

## ORDER AND REASONS

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim (R. Doc. 31) and Defendant's Motion to Strike Exhibit A to Plaintiffs' Response Memorandum in Opposition (R. Doc. 36).  For the following reasons, the Motion to Strike is DENIED and the Motion to Dismiss is GRANTED.

## BACKGROUND

*I.    Factual Background*

AGEM Management Services, LLC ("AGEM"), Bruno Wink, LLC ("Bruno Wink"), and Tangi

East, LLC ("Tangi East") (collectively "Plaintiffs") are corporate entities that were formed for the purpose of developing commercial real estate on the Gulf Coast.  (R. Doc. 30 at ¶7.)  In order to finance their ventures, Plaintiffs issued bonds to investors in the form of variable rate demand notes ("VRDNs"), which are bonds that have a long-term nominal maturity with a "floating" interest rate that fluctuates periodically in accordance with the SIFMA Swap Index rate.  (*See* R. Doc. 30 at ¶8; *see also* R. Doc. 31-1 at 4.) Plaintiffs were responsible for making the applicable variable rate interest payments to investors who purchased the VRDNs. The primary security for the obligations of repayment under the VRDNs was an irrevocable Letter of Credit to be issued by Whitney National Bank ("Whitney Bank").  (R. Doc. 30 at ¶8.) Additionally, Plaintiffs employed Frazier Lanier Company ("Frazier"), an investment-banking firm, to serve as their "remarketing agent."  (*Id.* at ¶9.) Frazier was responsible for locating investors to purchase Plaintiffs' VRDNs, and also for setting, on a weekly or monthly basis, the interest rates payable on the VRDNs. (*Id.*) On April 1, 2008, Bruno Wink and AGEM obtained $7.8 million and $1.9 million in financing, respectively, under the above VRDN arrangement.  (R. Doc. 30 at ¶10.)  On June 2, 2008, Tangi East obtained $5.5 million in financing.  (*Id.*)

   After issuing the VRDN bonds, and upon the advice of Whitney Bank, Plaintiffs entered into Interest Rate Swap Agreements ("Swap Agreements") on August 12, 2008 with Defendant First Tennessee Bank National Association ("First Tennessee") in an effort to hedge against the variable interest rate risk associated with the VRDNs. (R. Doc. 30 at ¶15.)  Plaintiffs contracted with First

Tennessee to pay a fixed interest rate on a notional amount of debt in return for First Tennessee's payment of a variable interest rate on the same notional amount of debt.  (*Id.*)  By doing so, Plaintiffs hoped to lock in a fixed interest rate on their outstanding VRDN debt, and thereby protect themselves in the event of an increasing SIFMA rate (R. Doc. 30 at ¶13.)  The Swap Agreements were to remain effective through March 26, 2013 for Bruno Wink and AGEM, and April 17, 2013 for Tangi East.  (*Id.*)

II.     *Plaintiffs' Allegations*

Plaintiffs seek relief against First Tennessee for breach of contract, fraudulent suppression, breach of fiduciary duty, misrepresentation, and civil conspiracy.  (Doc. 30 at ¶16, 18-39.)

Specifically, Plaintiffs allege that Whitney and First Tennessee operated under a fee sharing arrangement in which First Tennessee would pay Whitney a one-time fee in exchange for interest rate swap referrals.  (R. Doc. 30 at ¶12.)  Plaintiffs aver that under this contractual agreement, Whitney Bank would provide First Tennessee with counterparties (such as Plaintiffs) who speculate that bond interest rates will increase.  First Tennessee, who speculates that bond interest rates will decrease, would then enter into swap agreements with said counterparties. (*Id.*) Plaintiffs contend that Whitney benefits by receiving a portion of the one-time, industry-standard fee generated from the swap product transaction. Plaintiffs claim that First Tennessee and Whitney operated under this arrangement for over five years preceding Plaintiffs' Swap Agreements.  (*Id.*)

Plaintiffs maintain that Whitney Bank, acting as First Tennessee's agent pursuant to the

3

above agreement, knowingly made false representations to Plaintiffs in order to induce them to enter into Swap Agreements with First Tennessee.  Plaintiffs aver that this agreement resulted in substantial profits to both First Tennessee and Whitney Bank at the expense of Plaintiffs.  (R. Doc. 30 at ¶14.)  Plaintiffs also claim that First Tennessee did not disclose pertinent information to Plaintiffs at the time of the Swap Agreements. Had they done so, Plaintiffs argue, Plaintiffs would not have entered into the Swaps.  (R. Doc. 30 at ¶17.)

Succinctly, Plaintiffs base their injury on two primary misrepresentations: first, that Whitney's representation that the interest rate swaps would have the effect of converting the variable rates that Plaintiffs owed on their VRDN bonds into fixed interest rates, thereby eliminating the interest rate risk associated with their VRDNs.  (R. Doc. 30 at ¶14.)  Second, that First Tennessee's failure to disclose that an impairment on Whitney's Letter of Credit underlying each of the VRDN issuances would likely increase the interest rates Plaintiffs had to pay on the VRDN bonds, thus resulting in higher borrowing costs to Plaintiffs.  (R. Doc. 30 at ¶17.)  Plaintiffs assert that absent these intentional misrepresentations they would not have entered into the Swap Agreements with First Tennessee, and should accordingly be afforded relief.  (R. Doc. 30 at ¶16.)

III.    *Procedural History*

Plaintiffs filed the instant matter on April 19, 2012 in Civil District Court for the Parish of Orleans.  (R. Doc. 30.)  Defendant removed the case to this Court on May 29, 2012.  (R. Doc. 1.)  Defendant subsequently filed a Motion to Dismiss on June 5, 2012.  (R. Doc. 11.)   On November

7, 2012, the Court granted the Motion and dismissed Plaintiff's claims without prejudice.  (R. Doc. 25.)  Plaintiffs filed their Amended Complaint on November 28, 2012.  (R. Doc. 30.)

On December 12, 2012 Defendant filed a Motion to Dismiss the Amended Complaint.  (R. Doc. 31.)  On January 8, 2013 Plaintiffs filed an Opposition.  (R. Doc. 35.)  On January 15, 2013 Defendant filed a Motion to Strike Exhibit A from the Opposition.  (R. Doc. 36.)  On January 16, 2013 a Reply was filed by Defendant.  (R. Doc. 41.)  On January 22, 2013 the Plaintiffs filed an Opposition to Defendant's Motion to Strike.  (R. Doc. 42.)  The Court heard oral argument on both Motions on January 30, 2013 and took the Motions under submission.  (R. Doc. 44.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is "plausible on its face" when the pleaded facts allow the court to "[d]raw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. A court must accept the complaint's factual allegations as true and must "draw all reasonable inferences in the plaintiff's favor." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir.2009). The Court need not, however, accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949–50.

To be legally sufficient, a complaint must establish more than a "sheer possibility" that the

5

plaintiff's claims are true. *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (quotations and citation omitted). Rather, the complaint must contain enough factual allegations to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiffs' claim. *Lormand*, 565 F.3d at 255–57. The Court's review "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.2000)).   Ultimately, If it is apparent from the face of the complaint that an insurmountable bar to relief exists, and the plaintiff is not entitled to relief, the court must dismiss the claim. *Jones v. Bock*, 549 U.S. 199, 215 (2007).

## LAW AND DISCUSSION

I.   *Motion to Strike*

"When considering a Rule 12(b)(6) motion, a court may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims." *Maloney Gaming Management, L.L.C. v. St. Tammany Parish*, 456 Fed. Appx. 336, 340-341 (5th Cir. 2011); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2008) (directing courts to "consider the complaint in its entirety, as well as other sources

courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"). Defendant asserts that the letters attached to Plaintiffs' Opposition are not incorporated by reference or are otherwise central to their allegations in the Amended Complaint. (R. Doc. 36-1 at 2-3.) As such, Defendant requests the Court strike these letters from the record and from consideration.

In Paragraph 13 of Plaintiffs Amended Complaint, Plaintiffs allege that Whitney made a presentation in which they explained how Plaintiffs could obtain a fixed interest rate on their VRDNs. (R. Doc. 30 at ¶13.) Plaintiffs further contend that Whitney made numerous representations concerning the Swap Agreements and the risks associated therewith. In support of this contention, Plaintiffs attached in their Opposition letters from Whitney. (R. Doc. 42 at 1.) Plaintiffs explain that these documents "demonstrate the substance and provide context for the facts plead in Paragraph 13." (*Id.*)

The Court finds the substance of the allegations in Paragraph 13 support the attachment of the letters to their Opposition. Accordingly, these documents are appropriate to review when assessing a Motion to Dismiss. Accordingly, Defendant's Motion to Strike is denied.

II.     *Motion to Dismiss*

First, the Court finds that Louisiana law applies to Plaintiffs causes of action. Next, the Court finds that all of Plaintiffs' claims have prescribed under Louisiana law and that the doctrine of

*contra non valentum* does not apply.  Accordingly, the Court need not assess the substantive arguments that Plaintiffs have failed to state a claim.  For the following reasons, Plaintiffs claims are dismissed with prejudice.

### A.    Conflict of Law

In diversity cases, federal courts are bound by the conflict of law rules of the state in which they are sitting. *Kozan v. Comstock*, 270 F.2d 839 (5th Cir. 1959).   Accordingly, a federal district court sitting in Louisiana is bound to apply Louisiana choice-of-law rules. *Crase v. Astroworld, Inc.*, 941 F.2d 265 (5th Cir. 1991). Under the Louisiana choice-of-law doctrine, the law of the state with a greater interest in the case will usually apply to substantive issues.   *Id.* On the other hand, because Louisiana law views statutes of limitations as procedural in nature, Louisiana courts customarily apply the law of the forum to the issue of limitations.  *See, e.g., Rhode v. Southeastern Drilling Co., Inc.*, 667 F.2d 1215 (5th Cir. 1982); *Wright v. Fireman's Fund Ins. Co.*, 522 F.2d 1376 (5th Cir. 1975); *Le Mieux Bros. Corp. v. Armstrong*, 91 F.2d 445 (5th Cir. 1937). Therefore, Louisiana law regarding prescriptive periods applies to cases filed in this state, even where the substantive law of another state may govern the underlying substantive issue.  *See Wright*, 522 F.2d 1376, 1378 (1975); *see also Santos v. Sacks*, 697 F. Supp. 275, 284 (E.D. La. 1988).  Consequently, Louisiana's liberative prescription rules apply to Plaintiffs' claims in this case.

### B.    Fraud Claims: Fraudulent Suppression and Misrepresentation

Under Louisiana Civil Code article 3492, prescription commences to run from the date injury

or damage is sustained. La. Civ. Code art. 3492.  Damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action. *See, e.g., Williams v. Sewerage & Water Bd. of New Orleans*, 611 So. 2d 1383, 1386 (La. 1993); *Cole v. Celotex Corp.*, 620 So. 2d 1154, 1156 (La. 1993); *Aetna Cas. & Sur. Co. v. Stewart Const. Co., Inc.*, 780 So. 2d 1253, 1256 (La. App. 5 Cir. 2/28/01).  Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed. *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870 at 877 (5th Cir.2002).  When prescription is evident on the face of the pleadings, however, the "burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription, utilizing one of any number of legal constructs including . . . the doctrine of *contra non valentem*." *Terrebonne Parish*, 310 F.3d at 877; *Williams*, 611 So. 2d at 1386.

The nature of a cause of action must be determined before it can be decided which prescriptive term is applicable.  *Ames v. Ohle*, 97 So. 3d 386 (La. App. 4 Cir. 5/23/12). Louisiana Civil Code article 1953 provides that "fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction."  La. Civ. Code art. 1953.  The prescriptive period for a fraud claim under Louisiana law is one year from the date plaintiff knew or reasonably should have known of a defendant's fraudulent act.  *Delpit v. Ansell*, No. Civ. A. 97-1112, 2004 WL 551206, at *2 (E.D. La. Mar. 16, 2004) (quotations and citations omitted).

In the instant matter, prescription is evident on the face of the pleadings. Plaintiffs filed their Original Complaint on April 19, 2012. (R. Doc. 1-1.) Therefore, Plaintiffs' fraud based claims have prescribed if damage was sustained as a result of the Swap Agreements on or before April 19, 2011. Plaintiffs' Amended Complaint admits that Plaintiffs sustained damage as early as the "fall of 2008" as a result of increased interest rates on their VRDNs due to the Swap Agreements. (R. Doc. 30 at ¶20b.) Consequently, Plaintiffs fraud based claims have facially prescribed, absent an applicable exception to the one year prescriptive period. For the reasons more fully described *infra.*, the Court finds that Plaintiffs fail to meet their burden of proving an applicable exception. Accordingly, Plaintiffs fraud based claims are dismissed with prejudice.

### C.    Civil Conspiracy

"The Louisiana Supreme Court has held that conspiracy by itself is not an actionable claim under Louisiana law." *Ames v. Ohle*, 97 So.3d 386, 393 (La. App. 4 Cir. 5/23/12) (citations omitted). The actionable element of a conspiracy claim is not the conspiracy itself, but rather the tort that the conspirators agree to perpetrate and commit in whole or in part. *Id.*

Plaintiffs allege that Defendant conspired to obtain the swap, to misrepresent the true nature of the swap, to suppress material facts from Plaintiffs concerning the VRDNs, the swap, and the creditworthiness of Whitney's line of credit; and to commit other wrongs as alleged in the Complaint. (R. Doc. 30 at ¶39.) Thus, underlying Plaintiffs civil conspiracy claim are the claims of fraudulent suppression and misrepresentation. Because Plaintiffs "[c]laims for fraud and

misrepresentation are subject to a one-year prescriptive period, [Plaintiffs] claim for civil conspiracy is likewise subject to a one-year prescriptive period." *Ames*, 97 So.3d at 394.

Because Plaintiffs were aware of the underlying claims as early as the fall of 2008 their civil conspiracy claim is prescribed.  Consequently, Plaintiffs civil conspiracy claim is facially prescribed, absent an applicable exception to the one year prescriptive period.  For the reasons more fully described *infra.*, the Court finds that Plaintiffs fail to meet their burden of proving an applicable exception.  Accordingly, Plaintiffs civil conspiracy claim is dismissed with prejudice.

###    D.    Breach of Fiduciary Duty

Plaintiffs maintain that Defendants owed them a fiduciary duty in the capacity of an advisor to Plaintiffs.  (R. Doc. 30 at ¶31.)  Plaintiffs contend that in this capacity Defendant had a duty to set the interest rates at the lowest possible rate and had a duty to maintain the Swap and VRDN rate-setting so that the represented "fixed" rate would be achieved.   Plaintiffs allege that Defendant breached its fiduciary duty when it set the VRDNs at prices which resulted in interest rate charges to Plaintiffs in excess of other similarly situated bonds.  (*Id.*)

Defendant avers that Plaintiffs' breach of fiduciary duty claims are subject to the Louisiana Credit Agreement Statute ("LCAS").  (R. Doc. 31-1 at 7, 12-15) (citing La. Rev. Stat. Ann. § 6:1124).  Defendant argues that First Tennessee, the creditor, extended a financial accommodation to Plaintiffs, the "borrower" or debtor, in the form of an interest rate swap which Plaintiffs used to hedge against the risk of interest rate fluctuations on their VRDNs.  (R. Doc. 31-1 at 14.)

Accordingly, Defendant contends that the LCAS is applicable. Defendant avers that because the agreement between Plaintiffs and First Tennessee expressly states that First Tennessee is not acting as a fiduciary, the agreement does not comport with the clear requirements of the LCAS. Defendant further maintains that because the LCAS is applicable, so is the one year prescriptive period provided by the LCAS. As such, Defendant concludes that Plaintiffs' fail to state a claim and that the claim is prescribed.

Plaintiffs contend that the prescriptive period provided in the LCAS is inapplicable. Rather, Plaintiffs argue that their claims are subject to a ten-year prescriptive period. In support Plaintiffs cite to *Slayter & Slayter, LLC v. Ryland*, 953 So. 2d 1000, 1004 (La. App. 3 Cir. 3/7/07). The *Slayter* Court found that a fiduciary duty is imposed when an employee acts in the capacity as an officer on behalf of a limited liability company. *Id.* at 1005. In this situation the ten-year prescriptive period for breach of fiduciary duty under Louisiana Civil Code Article 3499 is invoked. *Id.* at 1005–06.

The Court finds the *Slayter* case inapplicable. First, the *Slayter* case dealt with a suit between a limited liability company and its former employee - not a financial institution and its clients. Second, the fiduciary relationship analyzed was that of an employee-officer of a company, not the relationship between a financial institution and its customers. Applicable in *Slayter* was the Louisiana law that imposes a fiduciary duty to the corporation on corporate officers and directors. *Id.* at 1005 (citing La. Rev. Stat. Ann. § 12:91(A)). It is a breach of this fiduciary

relationship that gives rise to the ten year prescriptive period provided in Article 3499. *See Id.* On the other hand, Louisiana Revised Statute Section 12:91 is inapplicable to the instant matter. The correct Louisiana law to apply in this case is the Louisiana Credit Agreement statute which outlines the fiduciary obligations of financial institutions to its customers. *See* La. Rev. Stat. Ann. § 6:1124. For these reasons, *Slayter* is irrelevant to the instant matter and the Louisiana Credit Agreement Statute is the appropriate Louisiana law to determine the fiduciary relations of the parties.

"The Louisiana Credit Agreement Statute operates as a 'statute of frauds' for the credit industry." *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 469 (5th Cir. 2006) (quoting *King v. Parish Nat'l Bank*, 885 So.2d 540, 546 (La. 2004)). The primary legislative purpose behind this statute "[w]as to establish certainty as to the contractual liability of financial institutions, which would in turn limit lender liability lawsuits based on oral agreements." *King*, 885 So.2d at 546 (citations and quotations omitted). The Louisiana legislature expanded the LCAS beyond credit agreements in relation to fiduciary obligations of a financial institution. Specifically, "[S]ection [1124] is not limited to credit agreements and *shall apply to all types of relationships in which a financial institution may be a party*." La. Rev. Stat. Ann. § 6:1124 (emphasis added). The Court finds that First Tennessee is a financial institution and is a party to the Swap Agreements. Accordingly, Section 1124 of the LCAS applies to the case at bar.

The LCAS maintains that there can be no implied fiduciary obligations for a financial institution. Specifically, the LCAS specifically provides that

13

no financial institution or officer or employee thereof shall be deemed or implied to be acting as a fiduciary, or have a fiduciary obligation or responsibility to its customers or to third parties other than shareholders of the institution, unless there is a written agency or trust agreement under which the financial institution specifically agrees to act and perform in the capacity of a fiduciary. The fiduciary responsibility and liability of a financial institution or any officer or employee thereof shall be limited solely to performance under such a contract and shall not extend beyond the scope thereof. Any claim for breach of a fiduciary responsibility of a financial institution or any officer or employee thereof may only be asserted within one year of the first occurrence thereof.

La. Rev. Stat. Ann. § 6:1124.

The Swap Agreements between First Tennessee and the Plaintiffs are governed by a master agreement and confirmation setting forth the particulars of the transaction. The master agreement (an International Swap Dealers Association (ISDA) Master Agreement), entered into in August, 2008, included First Tennessee's terms of dealing and risk disclosures, which, in turn, expressly disavowed the existence of any advisory or fiduciary relationship absent an express written undertaking by First Tennessee. (R. Doc. 31-2 at 18, R. Doc. 31-3 at 18, R. Doc. 31-3 at 18.) Accordingly, by the express terms of the agreement, there was never a fiduciary relationship in existence between Plaintiffs and First Tennessee.

Even assuming, *arguendo*, that First Tennessee did breach a fiduciary duty to Plaintiffs, this claim has nevertheless prescribed under the LCAS. The first occurrence of the breach of fiduciary duty, i.e. not setting the lowest possible rate, occurred in the fall of 2008. (*See* R. Doc. 30 at ¶20b) ("[Plaintiffs'] VRDNs increased in the fall of 2008")). This is more than three years prior to Plaintiffs

14

filing the instant matter in April, 2012 and obviously well beyond the one year requirement to bring a claim for breach of a fiduciary duty as required by the LCAS.  Accordingly, Plaintiffs' breach of fiduciary duty claim is prescribed.

       **E.**       **Breach of Contract**

       Louisiana Civil Code Article 3499 applies to actions on contracts and provides for a prescriptive period of ten years.  La. Civ. Code art. 3499.  Under Louisiana law, however, prescriptive periods are not determined by the label of the cause of action, but are instead determined by the nature of the transaction and the underlying basis of the claim. *Copeland v. Wasserstein, Perella & Co., Inc.*, 278 F. 3d 472, 479 (5th Cir. 2002).  Therefore, the nature of the duty breached determines whether the action is in tort or contract. *Roger v. Dufrene*, 613 So.2d 947 (La. 1993).  "The classical distinction between contractual and delictual damages is that the former flow from an obligation contractually assumed by the obligor, whereas the latter flow from a violation of general duty owed by all persons."  *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 886-887 (5th Cir. 2002) (citations omitted).  Ultimately, "[e]ven when a tortfeasor and victim are bound by a contract, Louisiana courts usually apply delictual prescription to actions that are really ground in tort." *Id.*

       Here, Plaintiffs allege breach of contract based on First Tennessee's alleged misrepresentation that the Swaps would yield an overall fixed interest rate on Plaintiffs' outstanding VRDNs.  (R. Doc. 30 at ¶¶ 18-22.)  Plaintiffs further contend that First Tennessee's

breached their duty to advise that if Whitney's Line of Credit became impaired then this impairment would result in higher borrowing costs to Plaintiffs.  (*Id.*)  Plaintiffs aver that First Tennessee failed to disclose material facts to Plaintiffs and, as a result, the interests rates on the VRDNs increased resulting in damage to Plaintiffs.  (*Id.*)

After careful review of the Amended Complaint and the ISDA Master Agreements this Court finds that misrepresentation and failing to disclose are not duties that First Tennessee contractually assumed.  (*See* R. Docs. 31-2, 31-3, 31-4.)  The Court finds that while guised as a breach of contract action, it is merely a repeat of other allegations in the Amended Complaint - namely misrepresentation, breach of fiduciary duty, and fraudulent suppression.  Therefore, Plaintiffs alleged damages are actually based in tort and not in contract.  Accordingly, the one-year prescriptive period applicable to delictual actions applies to Plaintiffs' "breach of contract" claim. Because Plaintiffs filed suit more than three years after such claims accrued, Plaintiffs claims are prescribed.  Moreover, for the reasons more fully described *infra.*, the Court finds that Plaintiffs fail to meet their burden of proving an applicable exception to the one year prescriptive period. Accordingly, Plaintiffs delictual based claims are dismissed with prejudice.

**F.    Contra Non Valentum**

Plaintiffs argue that the doctrine of *contra non valentum* applies to their claims.  The doctrine of *contra non valentem* is a jurisprudential exception to the general rules of prescription. *Wimberly v. Gatch*, 635 So.2d 206, 211 (La.1994). Because *contra non valentem* is a judicial

16

exception to the statutory rule of prescription, the doctrine is strictly construed and its benefits are only extended up to the time that the plaintiff has actual or constructive knowledge of the tortuous act. *Terrebonne Parish School Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 320 (5th Cir. 2002).

Generally, the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of four categories: "(1) where some legal cause prevented the courts or their officers from taking cognizance of or acting on the plaintiff's behalf; (2) where some condition coupled with a contract or connected with the proceedings prevented the creditor from suing for action; (3) where the debtor did some act effectively to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant." *Huddleston*, 106 So.3d 567 at 573; *R. J. Reynolds Tobacco Co. v. Hudson*, 314 F.2d 776, 786 (5th Cir. 1963).  The fourth category, known as the "discovery rule," suspends prescription until such time as a plaintiff knew or reasonably should have known that his or her damages were the fault of a defendant's tortious conduct. *Harvey v. Dixie Graphics, Inc.*, 593 So. 2d 351, 354 (La. 1992).  This is the exception that Plaintiffs contend apply to this matter.  (R. Doc. 35 at 4.)

"Louisiana courts have used the doctrine of *contra non valentem* to suspend the running of prescription when the cause of action is not known or reasonable knowable by the plaintiff, even though his ignorance is not induced by the defendant."  *Frank v. Shell Oil Co.*, 828 F. Supp. 2d 835,

844 (E.D. La. 2011) (citing *Bartucci v. Jackson*, 246 F. Appx. 254, 257 (5th Cir. 2007)).  Suit need not be filed when there is a "mere apprehension that something might be wrong."  *Ducre v. Mine Safety Appliances*, 963 F.2d 757, 760 (5th Cir. 1992).  Rather, there must be"[k]nowledge of the tortious act, [] damage caused by the tortious act, and the causal link between the act and the damage before one can be said to have constructive notice of one's causes of action."  *Id.*  On the other hand, [t]his principle will not exempt the plaintiff's claim from the running of prescription if his ignorance is attributable to his own wilfulness or neglect; that is, a plaintiff will be deemed to know what he could by reasonable diligence have learned."  *Marin v. Exxon Mobile Corp.*, 48 So.3d 234, 246 (La. 2010) (citations and quotations omitted).

As noted previously, Plaintiffs admit in their Complaint that they sustained damage as early as the fall of 2008. (R. Doc. 30 at ¶20b.)  Plaintiffs argued at oral argument, however, that they did not discover that fraud had been perpetrated until after April 19, 2011 - e.g. within the one year prescriptive period.  Plaintiffs explained that payments by the Plaintiffs were made by clerical staff.  Thus, while Plaintiffs' clerical staff knew that the rates and the payments had gone up, the actual Plaintiffs had no knowledge of either increase.   The Plaintiffs argued that this is insufficient knowledge or notice to begin the running of prescription.  The Court disagrees.

The Court finds that prescription began to run when the rates and payments were increased in 2008.  The Court finds that these increases were sufficient to provide notice to begin the running of prescription.  This is particularly true because Plaintiffs made monthly payments under the

Agreements.  At the times that the rates and payments went up the Plaintiffs could have, with reasonable diligence, learned of any potential fraudulent conduct.  At this time Plaintiffs could have discerned that any damages sustained may have been the fault of Defendants.  Accordingly, because Plaintiffs knew or reasonably should have known that their damages were the fault of Defendant as early as 2008, *contra non valentem* does not apply to suspend the running of prescription. Consequently, all of Plaintiffs claims have prescribed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Strike Exhibit A to Plaintiffs' Response Memorandum in Opposition (Doc. 36) is DENIED.  Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 31) is GRANTED.  Plaintiffs claims are DISMISSED WITH PREJUDICE.

Judgment shall be entered in accordance with this Order.

New Orleans, Louisiana this 25th day of April, 2013.

JANE TRICHE MILAZZO
UNITED STATES DISTRICT JUDGE

19